## THE PRINCETON.

### HOBOKEN FERRY CO. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. April 24, 1895.)

#### No. 115.

1. COLLISION OF FERRYBOATS IN NEW YORK HARBOR—FOG SIGNALS.

The statutory rule requiring steam vessels under way in a fog to sound steam whistles at intervals of not less than a minute, applies to all such vessels moving in waters which they have not the exclusive right to occupy, and in which other vessels may be met. *Held*, therefore, that a ferryboat, which was moving about in a dense fog, part of the time within and part of the time without the line of the piers, attempting to find her slip, was in fault for ceasing to sound the signals. Distinguishing The Shady Side, 17 Blatchf. 132, Fed. Cas. No. 12,692. Reversing 61 Fed. 116.

2. SAME—RIGHTS OF FERRYBOAT INSIDE OF PIERS.

A ferryboat has not the exclusive right to occupy the water lying within the ends of the piers above and below her slip; and, although

·vessels passing up and down the river would not ordinarily enter the same,·they would not be trespassers there, as they might unintentionally get inside the line in a fog.

**8. SAME.**

Vessels passing up and down the Hudson river unduly encroach upon the rights of ferryboats when they keep so near the ends of 'the piers as to unnecessarily embarrass the latter in their movements in entering or leaving their slips. *Held,* therefore, that a ferryboat which had crossed from Hoboken to the New York shore, and was slowly feeling her way down the river in a dense fog, near to or within the ends of the piers which were located above and below the slip of another ferryboat, was in fault for collision with the latter.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by the Hoboken Ferry Company, owner 'of the ferryboat Orange, against the ferryboat Princeton, the Pennsylvania Railroad Company, claimant, to recover damages occasioned by a collision between the two vessels. In the district court the libel was dismissed. 61 Fed. 116. The libelant appeals.

Stewart & Macklin, for appellant.

Robinson, Biddle & Ward, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The collision which is the subject of controversy in this cause took place in the Hudson river, in the early morning, in a heavy fog, between two ferryboats, the Orange and the Princeton. The Orange was upon one of her regular trips from Hoboken, bound for her slip at the foot of Barclay street; and the Princeton had come from Jersey City on one of her regular trips, bound for her slip at the foot of Desbrosses street. Owing to the heavy fog, the Orange, instead of proceeding on her usual course, had been brought over near the New York shore, somewhat above the ferry slip of the Princeton, and was slowly feeling her way down the river near the ends of the piers, sounding her fog signals at proper intervals, and had got nearly opposite the slip of the Princeton, when she heard the paddlewheels of the Princeton, a short distance off on her port bow. She immediately reversed her engines, and sounded alarm whistles, but instantly the Princeton became visible, and struck the Orange on the latter's port bow. The Princeton, while opposite her slip, had been obliged to wait for a tow which passed between her and the ends of the piers, and had drifted with the flood tide somewhat above her slip. She then went forward, and attempted to make her slip, but failed to do so; and, intending to make a second attempt, backed out and up the river a distance of about 200 feet, and had ordered her engines ahead, but was still moving backward when the collision took place. She had been sounding her fog signals at proper intervals up to the time when the tow passed in front of her; but at that time, being so near her slip, she stopped sounding them, and from that time until the collision, an interval which occupied two or three minutes, she omitted to give any signals. The ferryboats of the several lines had distinctive

fog signals, and each vessel on this occasion had heard and recognized the signals of the other; but when the Princeton stopped giving signals the pilot of the Orange assumed that she had entered her slip, and until her paddlewheels were heard supposed she was out of the way of the Orange.

It is quite difficult, if not imposible, in view of the density of the fog, to locate the precise spot of the collision, and the contradiction in the testimony of the witnesses need not be ascribed to any intentional misrepresentation on the part of any of them. The district judge was of the opinion that it was inside of a line drawn from the end of pier 41 to the end of the first pier below the slip of the Princeton, and the weight of testimony would seem to favor that conclusion. Both piers projected into the river beyond the entrance of the ferry slip, pier 41 about 300 feet and the lower pier about 200 feet. As these piers were about 600 feet apart, there was a very considerable area of water between a line extending from their ends and the entrance to the ferry slip. The pilot of the Orange had discovered that his vessel was near the piers when some little distance above pier 41. His vessel at that time was then heading a little west of south, and he testifies that he thereupon headed her more to the south, and kept her on that course until the collision occurred, a period of three or four minutes. This change must have brought the Orange quite close to the end of pier 41 as she came opposite to it, and by the time she was opposite the ferry slip it is probable she was inside of the line of the pier ends.

Upon these facts we think both vessels should be held in fault. The Princeton violated the statutory rule which requires all steam vessels, when under way in a fog, to sound a steam whistle at intervals of not more than one minute. She had been under way, going forward and backward, part of the time outside and part of the time inside of the line of the pier ends, during a period in which she should have sounded her whistle two or three times. It is not necessary to hold that the rule applies to a ferryboat after she has entered her slip, although still under way, because the Princeton had not entered her slip; but, unless its language is ignored, it must apply whenever a vessel is under way in waters which she has not the exclusive right to occupy, and in which other vessels may be met. The Princeton did not have the exclusive right to the area between the ends of the piers, and, although vessels passing up and down the river would not ordinarily enter it, they would not be trespassers there. In a fog such vessels might find themselves unintentionally and excusably inside of the line of the pier ends. The case of The Shady Side, 17 Blatchf. 132, Fed. Cas. No. 12,692, is cited as an authority for the proposition that a vessel moving in a fog in a slip between the piers is not required to sound fog signals. In that case the vessel charged with violating the rule was so far inside the pier ends that her omission to give fog signals was harmless, and, as the court said, would have tended to mislead the other vessel if they had been given. We fully acquiesce in the judgment in that case,

and in the cautious language of the opinion that the rule is only intended to apply to vessels moored or moving in the way of commerce, and not to those lying at docks, or, ordinarily, to those moving in slips. In the present case the pilot of the Orange was actually misled by the omission of the Princeton to continue sounding signals. He knew of the proximity of his vessel to the slip of the Princeton; knew that the Princeton had been approaching her slip on a course crossing the course of his own vessel, and was led to assume, as he reasonably might, when the signals of the Princeton stopped, that the latter had actually entered her slip, and was beyond the path of the Orange. He was thus lulled into a mistaken sense of security by her conduct.

The Orange must be condemned because she was navigating unjustifiably near the entrance to the ferry slip of the Princeton. Vessels passing up and down the Hudson river unduly encroach upon the rights of ferryboats when they keep so near the ends of the piers as to unnecessarily embarrass the latter in their movements in entering or leaving their slips. This proposition has recently been reiterated in The Breakwater, 155 U. S. 252, 15 Sup. Ct. 99. The exigencies of navigation frequently compel ferryboats to make maneuvers similar to those which the Princeton was making, and no other vessel is justified in unnecessarily encroaching upon the room required for executing them. The Orange was off her usual route, and was not in the vicinity of her own slip. If a course near the ends of the piers was safer or more convenient for her because of the dense fog, it was for the same reason more hazardous to the ferryboats whose slips lay along that course, and whose entrance or exit from them might be intercepted by her presence. Doubtless the master of the Orange did not intend to allow his vessel to come so near the entrance of the ferry slip, but he had ample warning of her proximity to it; and when he discovered the situation, and changed her course more to the southerly, he should have changed it more to the westerly, so as to keep a reasonable distance away.

Both vessels having been in fault, the presumption is that the fault of each contributed to the collision. If those in charge of the Princeton had expected that another ferryboat would be navigating between the ends of the piers, they probably would not have omitted the precaution of giving the fog signals. If these signals had not been omitted, the Orange would probably not have been misled, and could have taken necessary precautions to avoid collision. The case is one where each vessel has been guilty of a breach of duty, and it is impossible to say that the fault of one did not influence the conduct of the other.

We conclude that the decree of the district court should be reversed, and a recovery awarded to the libelant for half its damages. It is therefore ordered that the cause be remitted, with instructions to the district court to decree for the libelant conformably with this opinion, with the costs of this appeal.